UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAR MCQUEEN, *aka* NINA SHANAY MCQUEEN,<br><br>Plaintiff,<br><br>v.<br><br>EDMUND BROWN, et al.,<br><br>Defendants. | No. 2:15-cv-2544 JAM AC P<br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a transgender prisoner incarcerated at Mule Creek State Prison (MCSP), under the authority of the California Department of Corrections and Rehabilitation (CDCR). She proceeds pro se and in forma pauperis with a First Amended Complaint (FAC) filed April 19, 2018, pursuant to 42 U.S.C. § 1983. ECF No. 12. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).

Upon screening the FAC pursuant to 28 U.S.C. § 1915A, this court found that it states cognizable claims for declaratory and injunctive relief against defendants Dr. Jeffrey Carrick and (former) CDCR Secretary Scott Kernan for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment, and for discrimination based on plaintiff's transgender status under the Fourteenth Amendment's Equal Protection Clause. ECF No. 13.

1

Defendants have filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the allegations of the FAC fail to support cognizable legal claims and/or because defendant Carrick is entitled to qualified immunity and defendant Kernan is named only in his official capacity. ECF No. 21. Plaintiff filed an opposition, ECF No. 23; defendants filed a reply, ECF No. 26. For the reasons that follow, the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part.

Plaintiff's opposition to defendant's motion includes a motion for appointment of counsel, ECF No. 23 at 7-8, and a motion for preliminary injunctive relief, id. at 9-10. Defendants responded to these matters in their reply. ECF No. 26 at 5-7. For the reasons set forth below, the undersigned grants plaintiff's motion for appointment of counsel and denies without prejudice her motion for preliminary injunctive relief.

## II. Allegations and Claims of the First Amended Complaint

District courts are required to preliminarily screen all prisoner civil rights complaints. See 28 U.S.C. § 1915A(a). Dismissal of a complaint or portion thereof is warranted upon screening only if the prisoner has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from an immune defendant. 28 U.S.C. § 1915A(b)(1), (2). When screening a complaint under Section 1915A, the court is guided by Rule 8, Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is intended to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Applying these standards, the undersigned summarized the factual allegations of the FAC and identified the following legal claims against the named defendants, ECF No. 13 at 3-9:

> The FAC avers that plaintiff "has been diagnosed with the serious medical condition of gender dysphoria which, despite more than (8) eight years of feminizing hormone therapy, continues to cause plaintiff serious mental distress, and requires treatment in the form of SRS [sex reassignment surgery] as recommended by CDCR psychologist and supported by Plaintiff's medical records and prevailing medical standards of care." ECF No. 10 at 3.

2

Plaintiff has twice been denied requested SRS, first on January 26, 2016, see ECF No. 10 at 8, ECF No. 9 at 2, and most recently on January 2, 2018, see ECF No. 10 at 7. These final administrative decisions were rendered by the Headquarters Utilization Management Committee (HUMC), following findings by the Sex Reassignment Surgery Review Committee (SRSRC) that plaintiff's ongoing treatments for gender dysphoria "provide significant relief that is adequate and sufficient for her condition." ECF No. 10 at 7, 8; see also ECF No. 9 at 3-10. Preceding the first pair of decisions by the SRSRC and HUMC, plaintiff exhausted her inmate appeal remedies. ECF No. 10 at 9-19.

The FAC asserts two claims under 42 U.S.C. § 1983, both arising from the denial of plaintiff's requests for medically necessary SRS: (1) deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment's proscription against cruel and unusual punishment (Claim One); and (2) violation of plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause, based on alleged discrimination due to plaintiff's transgender status (Claim Two). See ECF No. 10 at 4.

. . . . The FAC makes no specific charging allegations against any named defendant. Instead, the FAC alleges in general terms that "defendants" violated plaintiff's constitutional rights. Nevertheless, [the] FAC states cognizable claims against defendants Carrick and Kernan.

The challenged conduct of defendant Carrick is readily identified from review of plaintiff's exhibits: Dr. Jeffrey Carrick, M.D., acting as "Deputy Medical Executive (A) Utilization Management," issued the HUMC decisions plaintiff challenges in this action. See ECF No. 10 at 7, 8. Given Dr. Carrick's apparently central and decisive role in issuing the challenged decisions, the court provisionally construes the complaint as stating claims against him in both his personal and official capacities.

. . . . CDCR Secretary Kernan also appears to be an appropriate defendant in his official capacity, because he would be able to respond to an order granting injunctive relief even though he had no personal involvement in the alleged constitutional violations.

III. Defendants' Motion to Dismiss

As earlier noted, defendants move to dismiss this action on the ground that that plaintiff's allegations fail to support cognizable Eighth and Fourteenth Amendment claims and/or because defendant Carrick is entitled to qualified immunity and defendant Kernan is named only in his official capacity. See ECF No. 21. Defendants request judicial notice of several documents in support of their motion. ECF No. 22. Plaintiff opposes defendants' motion, ECF No. 23; defendants have filed a reply, ECF No. 26.

3

### A. Legal Standards Governing Motion to Dismiss

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. North Star Intern. v. Arizona Corp. Com'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, (1992)). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388

(9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). However, the court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

B. Defendants' Request for Judicial Notice

Defendants request that this court take judicial notice of the following:

- Gender Dysphoria Management Policy, set forth in the California Correctional Health Care Services (CCHCS) Inmate Medical Services Policies and Procedures guidelines (Guidelines), Volume 4 (Medical Services), Chapter 26 (Gender Dysphoria Management Policy) (June 2015); see ECF No. 22 at 4 (Dfs. Ex. 1).[1]

- Supplement to CCHCS/DHCS Care Guide: Gender Dysphoria, Guidelines for Review of Requests for Sex Reassignment Surgery (SRS) (May 24, 2016); see ECF No. 22 at 6-14 (Dfs. Ex. 2).

- Defendants' Exhibit 2 in support of Motion to Dismiss filed September 6, 2016 in Young v. Smith, Case No. 2:15-cv-00733 TLN CMK P (ECF No. 45-2) (Declaration of Dr. C. Smith); see ECF No. 22 at 16-7 (Dfs. Ex. 3).

- California Office of Administrative Law, Emergency Notice Publication/Regulations Submission, amending Cal. Code Regs. tit. 15, §§ 3350, 3350.1, effective July 18, 2018, see ECF No. 22 at 19-27 (Dfs. Ex. 4).

The existence and contents of these documents are appropriate matters for judicial notice. See Fed. R. Evid. 201(b)(1) (court may take judicial notice of facts that are readily capable of accurate determination by sources whose accuracy cannot reasonably be questioned); City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."); United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (court may take judicial notice of its own records and the records of other courts). Accordingly, defendants' request for judicial notice, ECF No. 22, is granted in full.

////
////
////

---

[1] The CCHCS Guidelines are available online at https://cchcs.ca.gov/imspp/

5

C. <u>Analysis</u>

1. <u>Substitution of Current CDCR Secretary</u>

As a threshold matter, the court substitutes recently appointed CDCR Secretary Ralph Diaz for former CDCR Secretary Scott Kernan. <u>See</u> Fed. R. Civ. P. 25(d) (automatic substitution of successor to public official sued in his or her official capacity); <u>see also</u> <u>Hoptowit v. Spellman</u>, 753 F.2d 779, 781-2 (9th Cir. 1985).

2. <u>Eighth Amendment Claim</u>

Defendants contend that "documents attached to the FAC show that Plaintiff's Eighth Amendment claim amounts to nothing more than a disagreement over medical treatment," and therefore fails to state a cognizable claim for deliberate indifference to plaintiff's serious medical needs. ECF No. 21 at 3. In support of this contention, defendants argue, <u>id.</u> at 7-8 (emphasis added):

> [T]he documents attached to the FAC show that Plaintiff was considered for SRS by the Sex Reassignment Surgery Review Committee and the Headquarters Utilization Management Committee. (FAC at 7-8.) In accordance with the Guidelines, the Sex Reassignment Surgery Review Committee reviewed documents and information provided by the institution, which included Plaintiff's complete medical and mental health history. (<u>See</u> <u>id.</u> at 26.) The Sex Reassignment Surgery Review Committee also considered the medical necessity of the surgery. (FAC at 7-8.) After comprehensively reviewing Plaintiff's care, *the committee determined that Plaintiff's current treatments for gender dysphoria provided significant relief that was adequate and sufficient for her condition*. (<u>Id.</u>) Accordingly, it recommended the request be "not approved." (<u>Id.</u>) The Headquarters Utilization Management Committee agreed and did not approve Plaintiff for surgery. (<u>Id.</u>)
>
> Plaintiff alleges that her request for surgery was denied despite the recommendation of a CDCR psychologist. (<u>Id.</u> at 3.) Even if this allegation were true, Plaintiff's claim fails for two reasons. First, Plaintiff's claim still constitutes a difference of opinion between medical providers, which does not state an Eighth Amendment claim. [Citation.] Second, the Guidelines explicitly prohibit the referring institution from recommending approval or denial of a request for SRS. (FAC at 22 ("The [Institution Utilization Management Committee] shall neither approve nor deny the request for SRS.") Instead, institution providers are to refer requests for SRS to the Institution Utilization Management Committee, which in turn provides information to the Headquarters Utilization Management Committee for evaluation and final determination. (<u>Id.</u> at 22.) Plaintiff's allegation that a CDCR psychologist recommended the surgery cannot support a claim for deliberate indifference.

6

> Thus, the exhibits attached and incorporated to the FAC show that Plaintiff's current treatments for gender dysphoria were fully considered when the Headquarters Utilization Management Committee denied Plaintiff's SRS request. At most, Plaintiff alleges a disagreement between medical providers with the course of treatment.

Plaintiff responds that defendant's assessment is "argumentative" and reflects "merely defendant's [sic] own personal opinion." ECF No. 23 at 2. In support of her opposition, plaintiff has provided additional exhibits reflecting her "medical history with regards to SRS request." Id. at 11-31. Defendants reply that these "documents support Defendants' contention that Plaintiff's medical needs were fully considered and addressed." ECF No. 26 at 2. Defendants assert, id. at 2-4 (emphasis added):

> Documents attached to the FAC, and incorporated into it by reference, indicate that Plaintiff's requests were considered by the Sex Reassignment Surgery Review Committee and the Headquarters Utilization Management Committee. (First Am. Compl. (FAC), ECF No. 12, pp. 7-8.) The review committee examined Plaintiff's medical and mental health history to reach a determination. (Id.) Plaintiff supported her opposition with an exhibit entitled "Medical History with Regards to SRS Request." (ECF No. 23 at 11-31.) After a full review of her medical and mental health history, the headquarters utilization committee twice determined that Plaintiff was not an appropriate patient for sex-reassignment surgery. (FAC at 7.) Accordingly, all admissible evidence undisputedly shows that, notwithstanding Plaintiff's claims of deliberate indifference, the physicians and medical professionals appropriately evaluated Plaintiff's medical condition and exercised their discretion when they determined a course of treatment.
>
> Before the headquarters utilization committee's decision concerning Plaintiff's 2016 request for sex-reassignment surgery, Plaintiff was seen by Dr. Soltanian in August 2015. (ECF No. 23 at 12-13.) Dr. Soltanian conducted a physical examination and also reviewed Plaintiff's medical history, including her history of gender dysphoria, past surgeries, medications, and laboratory data. (Id.) Consistent with California Department of Corrections and Rehabilitation (CDCR) policy, Dr. Soltanian noted that the information gathered would be discussed at the Institutional Utilization Management Committee and submitted to the Headquarters Utilization Management Committee for consideration by the Sex Reassignment Surgery Review Committee. (ECF No. 23 at 13; see also Guidelines for Review of Requests for Sex Reassignment Surgery (SRS) (Guidelines), FAC at 22.) Also, in accordance with the review guidelines, Dr. Soltanian discussed the potential risks of surgery with Plaintiff and obtained her consent for further treatment. (ECF No. 23 at 14; see also Guidelines – Attachment 2, FAC at 27.) The Institution Utilization Management Committee met on August 13,

2015, and an SRS Consideration Patient Checklist was completed. (Id. at 15; see also Guidelines - Attachment 3, FAC at 28.)

Leading up to the 2018 decision on Plaintiff's second request for sex-reassignment surgery, a detailed "Institutional Evaluation for Consideration of Sex Reassignment Surgery" report, dated July 31, 2017, was completed. (ECF No. 23 at 18-28.) The report includes a thorough review of Plaintiff's mental health history, history of substance abuse, family and social history, suicide attempts and instances of self-injurious behavior, trauma history, transgender history, and gender dysphoria evaluations. (Id.) Plaintiff was seen by Dr. Kahlon for an exam following her request for sex-reassignment surgery. (Id. at 29.) Similar to Dr. Soltanian, and consistent with applicable policies, Dr. Kahlon reviewed the potential risks of surgery with Plaintiff and obtained her consent for further treatment. (Id. at 30.) The Institution Utilization Management Committee met on October 3, 2017, and an SRS Consideration Patient Checklist was completed. (Id. at 31.)

*All of these documents, with respect to both the 2016 and 2018 requests, show that Plaintiff's medical need for sex-reassignment surgery was thoroughly reviewed and considered under the review guidelines governing such requests. Plaintiff cannot show that anyone disregarded her serious medical needs in evaluating and reaching a determination regarding her medically-necessary treatment.* Moreover, Plaintiff cannot show that Defendant Dr. Carrick, who issued the Headquarters Utilization Management Committee decision memoranda to Plaintiff regarding her requests, was deliberately indifferent. Plaintiff's disagreement with prison medical and mental health staff cannot support a claimed constitutional violation. Thus, the Court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim.

Defendants' exhibits make clear that an institutional referral of a prisoner for SRS is initially made by an institutional provider submitting a Request for Services (RFS) to the prison's Institution Utilization Management Committee (IUMC). The IUMC is responsible for compiling and submitting all required information to the Headquarters Utilization Management Committee (HUMC or HQUMC), which forwards the case to the Sex Reassignment Surgery Review Committee (SRSRC) for a determination "whether the patient is an appropriate candidate for SRS from a medical and mental health perspective." The HUMC, the final decision-maker for SRS requests, is required to "afford great weight to the decision of the SRSRC and shall only reverse the decision of that body" if it finds "no substantial evidence to support the decision," the decision is not supported by "substantial evidence" or the SRSRC "failed to consider significant relevant information . . . or new evidence." Dfs. Ex. 2 (ECF No. 22 at 6-14).

In the present case, it appears that, despite the institutional assessments of Dr. Soltanian in 2015 and Dr. Kahlon in 2018, the SRSRC determined both years that plaintiff's "current treatments for gender dysphoria . . . provide significant relief that is adequate and sufficient for her condition." ECF No. 12 at 7, 8. The HUMC agreed with the SRSRC's recommendation in both instances and denied plaintiff's requests for SRS. Id.

Defendants argue that the SRSRC and, as a result, the HUMC, "thoroughly reviewed" plaintiff's medical needs and therefore did not "disregard" them; and hence their conclusion that continued hormone therapy is "adequate and sufficient" to treat plaintiff's gender dysphoria reflects a "mere difference of opinion" with the assessments made by institutional physicians Dr. Soltanian and Dr. Kahlon.

Defendants correctly note that, as a general rule, "a plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (quoting Sanchez v. Vild, 891, F.2d 240, 242 (9th Cir. 1989)). "In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." Jackson, 90 F.3d at 332 (citing Estelle v. Gamble, 429 U.S. 97, 107-08 (1976)).

However, this general rule applies to circumstances involving two or more objectively acceptable courses of treatment. It does not apply to circumstances in which plaintiff plausibly alleges "that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . in conscious disregard of an excessive risk to plaintiff's health." Jackson, 90 F.3d at 332 (citing, inter alia, Farmer v. Brennan, 511 U.S. 825, 837 (1994)); accord, Toguchi v. Chung, 391 F.3d 1951, 1058 (9th Cir. 2004). This is the very crux of plaintiff's Eighth Amendment claim – that hormone replacement therapy, which she has maintained for several years, has proven to be an ineffective treatment for the severe mental and physical distress plaintiff experiences as a result of her gender dysphoria. It is plaintiff's allegation that SRS is the *only way* to treat her gender dysphoria and hence that it was medically unacceptable for

9

defendants to refuse plaintiff's requests for SRS, which she alleges was decided in conscious disregard of the excessive risks to plaintiff's mental and physical health. See Rosati v. Igbinosos, 791 F.3d 1037, 1040 (9th Cir. 2015) (plaintiff "plausibly alleges her symptoms . . . are so severe that prison officials recklessly disregarded an excessive risk to her health by denying SRS"); Stevens v. Beard, 2018 WL 2081850, at *6, 2018 U.S. Dist. LEXIS 74519, at *12 (E.D. Cal. May 2, 2018) (Case No. 1:17-cv-01002 AWI SAB PC) (in denying defendants' motion to dismiss plaintiff's Eighth Amendment challenge to the denial of her request for SRS where "several medical experts have recommended SRS," the court found that "[p]laintiff has plausibly alleged more than a mere disagreement with the course of treatment.")

"[A] difference of medical opinion does not preclude a finding of deliberate indifference." Hamby v. Hammond, 821 F.3d 1085, 1097 (9th Cir. 2016) (Gould, J. concurring in part and dissenting in part) (citations omitted). "'Just because [defendants] have provided [a prisoner] with some treatment consistent with the [] Standards of Care, it does not follow that they have necessarily provided her with *constitutionally adequate* treatment.'" Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1187 (N.D. Cal.), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015) (quoting De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) (emphasis in original)).

The record is not sufficiently developed to make a final determination on plaintiff's Eighth Amendment claim. However, accepting the allegations of the complaint as true and drawing all reasonable inferences in plaintiff's favor, as required under Rule 12(b)(6), Iqbal, 556 U.S. at 678, the court finds that plaintiff has plausibly alleged defendants' denial of SRS was deliberately indifferent. Therefore, the undersigned recommends that defendants' motion to dismiss plaintiff's Eighth Amendment claim be denied.

3.  Equal Protection Claim

Upon screening the FAC, this court found an equal protection claim based on plaintiff's allegations that her request for SRS was treated differently than "a non-transgender inmate's request for medically necessary surgery." ECF No. 13 at 4 (quoting FAC at 4). See also, Denegal v. Farrell, 2016 WL 3648956, at *7, 2016 U.S. Dist. LEXIS 88937, at *19 (E.D. Cal. July 8, 2016) (Case No. 1:15-cv-01251 DAD MJS (PC) (plaintiff's allegations that defendants

"discriminate against transgender women by denying surgery (vaginoplasty) that is available to cisgender women and that this difference in treatment is unsupported by any legitimate state purpose . . . are sufficient at the pleading stage to state an equal protection claim, even under the rational basis test."), report and recommendation adopted, 2016 WL 8731336, 2016 U.S. Dist. LEXIS 122586 (E.D. Cal. Sept. 9, 2016).

Defendants contend that plaintiff's allegations are too vague and conclusory to state an equal protection claim and, to the extent the claim rests on an alleged violation of former CDCR regulation Cal. Code Regs. tit. 15, § 3350.1, amendment of the statute renders the claim moot. ECF No. 21 at 8-10; ECF No. 26 at 4-5.

In response, plaintiff attempts to shift the classification underlying her equal protection claim from her transgender status to her racial status. Plaintiff, who is African American, now alleges that "[d]efendants violated her rights under the Equal Protection Clause by treating her differently from similar situated white transgender inmates seeking SRS surgery." ECF No. 23 at 2-3. Plaintiff asserts that, to date, CDCR has authorized SRS surgery for only one transgender female inmate, who is white, citing Norsworthy v. Beard et al., 87 F. Supp. 3d 1164 (N.D. Cal. Apr. 2, 2015) (granting motion for preliminary injunction directing CDCR officials to provide plaintiff with SRS).[2]

The court has reexamined the allegations of the FAC in support of plaintiff's equal protection claim and agrees with defendants that plaintiff was challenging, sub silentio, former Section 3350.1 as it existed when plaintiff filed her FAC in April 2018. Plaintiff alleged that defendants "*applied the statute*" in a discriminatory manner "on the basis of her gender and transgender status;" that defendants "*applied the policy as a de facto bar* to plaintiff's request for SRS – vaginoplasty in particular – solely as the result of plaintiff being assigned male at birth,

---

[2] However, as plaintiff notes, Norsworthy was paroled pending CDCR's appeal on the district court's ruling. The Ninth Circuit found the appeal moot but remanded the action to the district court to assess the circumstances of Norsworthy's release, determine whether to vacate its preliminary injunction order, and consider the question of the award of attorneys' fees. Norsworthy v. Beard et al., 802 F.3d 1090 (9th Cir. Oct. 2, 2015). Thereafter, in the district court, the parties stipulated to the voluntary dismissal of the action on February 24, 2016. See Case No. 3:14-00695 JST (PR) (N.D. Cal.), ECF Nos. 139, 141.

11

and a transgender woman in particular;" and that defendants "intentionally treat Plaintiff differently from non-transgender female inmates seeking vaginoplasty due to her gender and transgender status." ECF No. 12 at 4 (emphasis added).

When plaintiff filed her FAC, former Section 3350.1 identified vaginoplasty as a surgery "that is not medically or clinically necessary [and] shall not be provided," except to correct cystocele or rectocele in cisgender women. See ECF No. 22 at 21 (Defs.' Req. Jud. Not., Ex. 4). (former § 3350.1). However, on July 18, 2018, after plaintiff filed her FAC, CDCR enacted emergency regulations amending Section 3350.1 to, inter alia, remove vaginoplasty from the "not medically necessary" list. Id. at 21, 24. This change conformed CDCR regulations to CCHCS's gender dysphoria treatment guidelines which expressly authorize male to female vaginoplasty for transgender women when medically indicated. Id. at 14.

Thus, as defendants contend, plaintiff's allegations that she was discriminated against based on her transgender status, by application of a statute and/or policy creating a de facto bar to plaintiff obtaining vaginoplasty, supports construing plaintiff's equal protection claim as one premised on former Section 3350.1. Accord, Norsworthy, 87 F. Supp. 3d at 1110-14. This construction also supports defendants' argument that the claim was rendered moot July 18, 2018, when CDCR amended the statute to eliminate the challenged discrimination. "Mootness inquiries . . . require courts to look to changing circumstances that arise after the complaint is filed[.]" Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001) (citation omitted). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party. In that case, any opinion as to the legality of the challenged action would be advisory." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (citations and internal punctuation and quotation marks omitted).

The conclusion plaintiff's equal protection is moot is underscored by plaintiff's current effort to shift the classification underlying the claim from her transgender status to her racial status. Plaintiff may not expand or change the nature of her claims by making new allegations in

opposition to a motion to dismiss. See Lee v. City of Los Angeles, 250 F. 3d 668, 688 (9th Cir. 2001) ("when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), 'review is limited to the complaint'") (quoting Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993)); see also Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted).

Because the court's analysis on a motion to dismiss is necessarily limited to the allegations of the operative complaint, this court may not address plaintiff's new claims of racial discrimination. Accordingly, the undersigned finds that plaintiff's equal protection claim, as set forth in her FAC, is now moot and should be dismissed on that basis.

### 4. Defendant Carrick

Defendants contend that defendant Carrick is entitled to qualified immunity and hence dismissal from this action because he acted reasonably in evaluating plaintiff's medical needs. Defendants argue, ECF No. 21 at 11 (emphasis added):

> Defendant Carrick is entitled to qualified immunity because the exhibits attached to the FAC show that the Headquarters Utilization Management Committee and the Sex Reassignment Surgery Review Committee *considered* Plaintiff's SRS request under detailed CCHCS guidelines and *determined* that Plaintiff's current treatments for gender dysphoria provided *significant relief that was adequate and sufficient* for her condition. Such a determination does not show that Dr. Carrick acted unreasonably beyond debate. Instead, in situations where doctors have determined that a person's condition "typically" merits surgical treatment, but declined to provide surgery based on legitimate medical opinions, qualified immunity is warranted.

Significantly, "[q]ualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." Hydrick v. Hunter, 669 F.3d 937, 939-40 (9th Cir. 2012) (citations omitted). Therefore, defendant Carrick is not entitled to qualified immunity on plaintiff's claims for declaratory and injunctive relief. Because these are the only forms of relief sought by the FAC, defendant Carrick cannot be dismissed on qualified immunity grounds.

////

Even if plaintiff was seeking monetary damages in the FAC, or should be granted leave to do so in a further amended complaint, defendant Carrick is not entitled to qualified immunity on a motion to dismiss. The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted). To resolve a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right, and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635 (1987). These questions may be addressed in the order that makes the most sense given the circumstances of the case. Pearson, 555 U.S. at 236.

However, "[o]n a motion to dismiss, the Court is restricted to the allegations and facts stated in the Complaint." Kenney v. Hawaii, 109 F. Supp. 2d 1271, 1279 (D. Haw. 2000) (citations omitted). "When . . . defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016) (quoting Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001). Therefore, on a motion dismiss, the court's analysis of defendant Carrick's qualified immunity defense is limited to the allegations of the operative complaint, accepted as true, that Carrick was deliberately indifferent to plaintiff's serious medical needs.

As a result, it is usually premature to evaluate a defendant's qualified immunity defense on a motion to dismiss. "At trial, the facts may demonstrate that the defendant-physicians' conduct was perfectly reasonable and not deliberately indifferent, they may also demonstrate that the defendant-physicians acted wholly irresponsibly. Granting qualified immunity at this stage would, therefore, be premature." Kenney, 109 F. Supp. 2d at 1279-80. See also Kothmann v. Rosario, 2013 WL 12096653, at *4, 2013 U.S. Dist. LEXIS 193557 (M.D. Fla. June 6, 2013) ("Defendant is not entitled to qualified immunity at this stage [on a motion for dismiss or, alternatively, for summary judgment] merely because Plaintiff's particular disorder [Gender

Identity Disorder] is more obscure than others."), aff'd, 558 Fed. Appx. 907, 910-11 (11th Cir. 2014) ("Of course, as the court below noted, [defendant] would be entitled to qualified immunity if she can establish that [plaintiff] 'received adequate mental health treatment for his GID.' But here, the posture of this appeal is such that we must constrain our review to the facts alleged in the complaint[.]") (citations omitted); accord, Diamond v. Owens, 131 F. Supp. 3d 1346, 1373-74 (M.D. Georgia Sept. 14, 2015) (denying motion to dismiss on qualified immunity grounds because plaintiff sufficiently alleged defendants were deliberately indifferent to her serious medical needs "by their repeated refusal to provide, authorize, or refer her for [gender dysphoria] treatment they knew was medically necessary, thus causing and perpetuating psychological and physical harm").

The two cases cited by defendants are distinguishable. In Hamby v. Hammond, 821 F.3d 1085 (9th Cir. 2016), the Court of Appeals affirmed the district court's summary judgment for defendants on plaintiff's suit for money damages based on the pain he experienced prior to receiving umbilical surgery pursuant to a preliminary injunction. The Court held that defendants were protected by qualified immunity because their initial decisions denying plaintiff surgery were "based on legitimate medical opinions that have often been held reasonable under the Eighth Amendment." Id. at 1093. Hamby involved a suit for money damages based on a complete evidentiary record and a motion for summary judgment; the Court of Appeals relied on prior decisions clearly identifying medically accepted nonsurgical treatments for hernias. The instant case is distinguishable in each of these ways.

Defendants also rely on Young v. Smith, 2017 WL 3839970, 2017 U.S. Dist. LEXIS 142299 (E.D. Cal. Sept. 1, 2017) (Case No. 2:15-cv-0733 TLN CMK P), to argue that "while some individuals who suffer from gender dysphoria may benefit from sex reassignment surgery, some doctors, in exercising their medical opinions, may conclude that it or other treatments are not warranted or necessary." ECF No. 21 at 11. In Young, the plaintiff, a CDCR prisoner, was approved for SRS but denied additional requests for hair removal treatments, bleaching creams and female clothing, as recommended by Dr. Kumar. Drs. Smith and Naseer concluded that these items were not medically necessary. The district court found a nonactionable difference of

15

medical opinion and granted defendants' motion to dismiss. Young, 2017 WL 3839970, at *3, 2017 U.S. Dist. LEXIS 142299, at *7-8. In contrast, the record in the instant case does not reflect clear differences of medical opinion. The only supported medical opinions are those of plaintiff's institutional physicians Dr. Soltanian and Kahlon recommending SRS. In contrast, the decision of HUMC is a summary denial of SRS based on the referenced (but not included) findings of the SRSRC. This evidence is inadequate to demonstrate alternative courses of treatment that both are "medically acceptable under the circumstances." Jackson, 90 F.3d at 332.

In conclusion, because the doctrine of qualified immunity applies only to defendants sued for money damages, and the operative FAC in this case seeks only declaratory and injunctive relief, defendant Carrick is not entitled to qualified immunity. Defendants' motion to dismiss defendant Carrick from this action should therefore be denied.

### 5. Defendant CDCR Secretary

Defendants contend that defendant CDCR Secretary (formerly Scott Kernan) "was not personally involved in any of the events or facts at issue in the FAC and is named only in his official capacity for his ability to respond to an order granting injunctive relief," and therefore should be dismissed from this action "[i]f the court dismisses plaintiff's claims . . . because there will be nothing to enjoin." ECF No. 21 at 12.

Because this action will proceed on plaintiff's Eighth Amendment claim for declaratory and injunctive relief in the form of SRS, defendant CDCR Secretary (currently Ralph Diaz) must remain in this action. See ECF No. 13 at 7-8 (screening order explaining that the CDCR Secretary is an appropriate defendant in his official capacity "because he would be able to respond to an order granting injunctive relief even though he had no personal involvement in the alleged constitutional violations"). For this reason, defendants' motion to dismiss the CDCR Secretary should be denied.

### IV. Plaintiff's Motion for Appointment of Counsel

Plaintiff moves for appointment of counsel on the grounds that she is indigent, unlearned in the law and receives mental health services, and because the evidence and legal claims in this case are complex. ECF No. 23 at 7-8. Defendants oppose the motion. ECF No. 26 at 5-6.

16

The Supreme Court has ruled that district courts lack authority to require an attorney to represent an indigent prisoner in a Section 1983 case. Mallard v. United States District Court, 490 U.S. 296, 298 (1989). Nevertheless, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1), when a case presents exceptional circumstances. Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). This assessment requires the court to evaluate plaintiff's ability to articulate her claims pro se in light of the complexity of the legal issues involved and the likelihood of success on the merits of plaintiff's claims. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). "Neither of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel" under the statute. Wilborn, 789 F.2d 1331.

In general, circumstances common to most prisoners, such as indigence, lack of legal education and limited law library access, do not establish exceptional circumstances warranting appointment of counsel. See Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009). However, the court finds the legal issues presented by this case, as well as the pertinent medical evidence, to be particularly complex. Entitlement to SRS in a correctional setting is an important and evolving area of the law, both for lawyers and the courts, and is inadequately presented in plaintiff's current briefing. However, plaintiff's evidence – which supports her allegations that she has twice been denied SRS despite receiving feminizing hormone treatment for several years without obtaining adequate psychological relief – demonstrates a reasonable likelihood of success on the merits of her legal claims. For these reasons, and like other district courts considering similar circumstances,[3] the undersigned finds that exceptional circumstances warrant the appointment of

---

[3] See Norsworthy v. Beard, Case No. 14-cv-0695 JST (PR), ECF No. 4 (N.D. Cal. Mar. 26, 2014) (action challenging prison's refusal to provide SRS to treat a prisoner's gender dysphoria "presents novel and complex legal issues" demonstrating "exceptional circumstances" warranting appointment of counsel under Section 1915(e)(1)) (cited in Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1180 (N.D. Cal.), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015) (appeal dismissed as moot upon plaintiff's release from prison); and Norsworthy v. Beard, 2014 WL 1477401, at *2, LEXIS (N.D. Cal. Apr. 15, 2014)); accord, Quine v. Brown, Case No. 3:14-cv-02726 JST (PR), ECF No. 10 (N.D. Cal. Aug. 29, 2014); see also Denegal v. Farrell, Case No. (continued…)

17

counsel in this case under Section 1915(e)(1).

V. Plaintiff's Motion for Preliminary Injunctive Relief

Plaintiff seeks preliminary injunctive relief directing CDCR to "order an immediate SRS surgery evaluation and for preparation of said surgery," and "adequate medical care with includes SRS surgery." ECF No. 23 at 9-10. Defendants oppose the motion. ECF No. 26 at 6-7.

In evaluating the merits of a motion for preliminary injunctive relief, the court considers whether the movant has shown that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a hardship balance [] tips sharply toward the plaintiff, . . . assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

In light of the importance of this matter, the limited briefing on the merits in tandem with defendants' motion to dismiss, and prior to appointment of counsel for plaintiff, the motion will be denied without prejudice. Appointed counsel may, in consultation with plaintiff, file a new motion for preliminary injunctive relief if so indicated.

VI. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' request for judicial notice, ECF No. 22, is GRANTED;

2. Plaintiff's motion for preliminary injunctive relief, ECF No. 23 at 9-10, is DENIED without prejudice;

---

1:15-cv-01251 DAD MJS (PC), ECF No. 52 (E.D. Cal. Dec, 26, 2017) (summarily finding appointment of counsel warranted) (cited in Denegal v. Farrell, 2018 WL 4616262, at *2, LEXIS (E.D. Cal. Sept. 24, 2018).

3. Plaintiff's motion for appointment of counsel, ECF No. 23 at 7-8, is GRANTED; and

4. The Clerk of Court is directed to contact Sujean Park, Pro Bono Program Director, for the purpose of locating an attorney admitted to practice in this court who is willing to accept the appointment in this action for all purposes.

5. The Clerk of Court is further directed to substitute current CDCR Secretary Ralph Diaz for former CDCR Secretary Scott Kernan as a defendant herein.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss, ECF No. 21, be GRANTED IN PART AND DENIED IN PART;

2. Plaintiff's equal protection claim be DISMISSED from the First Amended Complaint without prejudice; and

3. This action proceed against defendants Carrick and Kernan on plaintiff's Eighth Amendment claim alleging deliberate indifference to plaintiff's serious medical needs.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 26, 2019

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE